■ In the Matter of MARK HOFFMAN et al., Respondents, v TOWN BOARD OF THE TOWN OF QUEENSBURY et al., Respondents, and THOMAS J. FARONE & SON, INC. et al., Appellants. [680 NYS2d 735] —Graffeo, J. Appeal from a judgment of the Supreme Court (Ferradino, J.), entered August 5, 1997 in Saratoga County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul resolutions of respondent Town Board of the Town of Queensbury determining that an environmental impact statement was not required for a proposed subdivision.

In December 1995, respondents, Thomas J. Farone & Son, Inc. and Michael J. Vasiliou, Inc. (hereinafter collectively referred to as respondents), submitted an application to respondent Town Board of the Town of Queensbury to rezone a 140-acre tract of land in the Town of Queensbury, Warren County. The application also sought approval for a development consisting of single-family homes, duplex units and senior citizen housing. Respondents submitted an environmental assessment form (hereinafter EAF) in December 1995 and a revised EAF in April 1996. The project was designated a type I action for purposes of the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) and the Town Board was designated as the lead agency. The Department of Environmental Conservation, Department of Health and the Town of Queensbury Planning Board were declared involved agencies.

The Planning Board held hearings from January 16, 1996 through August 5, 1996 and expressed concern to the Town Board with regard to the limited amount of land dedicated to open space/public use, population density, the impact of increased traffic, and the effect upon local property values. Respondents commissioned an archeological study which found sites worthy of protection and incorporated the suggestions regarding protection of wetlands and other sites into their revised plan. Geological studies were undertaken, including soil studies and percolation tests, and the Department of Health approved the project for on-site sewage treatment systems. Additionally, traffic studies were performed. On

August 19, 1996, after several revisions of the proposal based on Town Board and Planning Board concerns and community input, and after review and acceptance of the final portion of the EAF, the Town Board approved the application for the subdivision and issued a formal negative declaration.

In December 1996, petitioners commenced a CPLR article 78 proceeding challenging the Town Board's approval. Supreme Court granted the petition, finding that the Town Board erred in issuing a conditional negative declaration. This appeal ensued.

In its review of an agency's determination, a court may not substitute its judgment for that of the agency and weigh the desirability of the proposal (*see, Akpan v Koch*, 75 NY2d 561, 570; *Matter of Har Enters. v Town of Brookhaven*, 74 NY2d 524, 529; *Matter of East Coast Props. v City of Oneida Planning Bd.*, 167 AD2d 641, 642). An agency has considerable discretion in evaluating environmental effects and judicial review is limited to whether the agency " 'identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination' " (*Matter of King v Saratoga County Bd. of Supervisors*, 89 NY2d 341, 349-350, quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417).

Upon review of the entire record, we reject petitioners' contention that the Town Board's declaration was subject to impermissible conditions. Although a negative declaration by a lead agency may not be subject to conditions, a type I action subject to SEQRA may be modified during the approval process and still receive a negative declaration (*see, Matter of Merson v McNally*, 90 NY2d 742). As enunciated in *Matter of Merson v McNally* (*supra*), the two-prong test to determine whether a negative declaration has been impermissibly conditioned is "(1) whether the project, as initially proposed, might result in the identification of one or more 'significant adverse environmental effects'; and (2) whether the proposed mitigating measures incorporated into part 3 of the EAF were 'identified and required by the lead agency' as a condition precedent to the issuance of the negative declaration" (*id.*, at 752-753).

As to the first point for review, the record demonstrates that the Town Board identified several potential environmental impacts, conducted extensive public meetings and hearings, retained experts to review the potential impacts, solicited comments from the public and other involved agencies, and required mitigation measures of respondents. Subsequently, at a public meeting on August 19, 1996, the Town Board issued a

resolution finding that the environmental impacts were "not important". As manifested in the minutes of the meeting, the Town Board specifically discussed the actions and/or studies undertaken in evaluating the potential traffic and density/soil impacts, as well as mitigating factors and plan modifications undertaken throughout the review process. The record supports a finding that the Town Board took a "hard look" at the two "potentially large impacts" it identified and did not abuse its discretion in making specific findings of no significant adverse effects prior to issuing a negative declaration (*see, Matter of Buerger v Town of Grafton*, 235 AD2d 984, 985; *Matter of Byer v Town of Poestenkill*, 232 AD2d 851, 854-855).

Where mitigating measures are part of the "give and take" of the application process, rather than a condition of approval, a negative declaration may be valid (*see, Matter of Merson v McNally, supra*, at 753). It is clear that the mitigating measures referenced in the negative declaration were incorporated into the proposal in response to concerns of the Town Board, the community and other agencies raised during the "open and deliberative" application process (*see, id.*, at 753), as required by the second phase of the *Merson* analysis. Hence, the modifications were not a condition imposed solely by the lead agency but were proper amendments designed to mitigate potential impacts and are, therefore, insufficient to invalidate the negative declaration.

We have considered the remaining contentions of the parties and find them to be without merit.

Cardona, P. J., White, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as annulled the resolutions challenged; said resolutions are confirmed; and, as so modified, affirmed.